UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| ADRIAN PEREZ, | ) |
| Plaintiff, | ) No. 6:22-CV-127-REW-HAI |
| v. | ) |
| JAMES RANDALL WEAVER, | ) OPINION AND ORDER |
| Defendant. | ) |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Before the Court is Defendant James Randall Weaver's motion for summary judgment. *See* DE 86 (Motion); 86-1 (Memorandum in Support). Plaintiff Adrian Perez responded in opposition, *see* DE 87, and Weaver replied, *see* DE 88. For the following reasons, the Court **GRANTS** Weaver's motion.

**I.   Background**

On May 25, 2022, Weaver, in his capacity as a City of McKee police officer, responded to a public service complaint alleging that a minor child was "running around naked in the vicinity of the parking lot near the Kentucky Farm Bureau . . . and the directly adjacent parking lot of the Jackson County Extension Service Building[.]" DE 86-2 at 1 ¶ 3 (Weaver Affidavit). Weaver observed "a single, isolated vehicle"—which belonged to Perez—stopped between the parking lot of the Kentucky Farm Bureau and the Jackson County Extension Building. *Id.* at 2 ¶ 5. To investigate, Weaver parked his cruiser at the front of the Extension Building's parking lot, blocking, to an extent which the parties dispute, Perez's vehicle. *See* DE 1 at 6 (Complaint) (alleging that Perez was "blocked from leaving by Defendant Weaver who placed a police vehicle as a barrier in the exit"); 86-2 at 2 ¶ 9 (claiming that Weaver parked his cruiser "slightly to the left

1

of [Perez's] vehicle, roughly in an 11 o'clock position" and that "[t]here was enough room where Mr. Perez could have driven forward past my vehicle and exited the parking lot"). Weaver, still in his cruiser, introduced himself and asked Perez whether he had any knowledge regarding the public service complaint, to which Perez responded that he did not. *See* DE 1 at 8 ¶ 10 ;86-2 at 3 ¶ 12. Weaver then asked Perez whether he had any minor children with him, and Perez declined to answer. *See* DE 86-2 at 3 ¶ 12.

Weaver then exited his cruiser and observed a child—who he believed to be a minor[1]—sitting in the front passenger seat of Perez's vehicle. *See* DE 86-2 at 3 ¶ 16. Weaver asked for Perez's name, to which Perez replied, "I don't answer questions." DE 1 at 8 ¶ 8; 93 at 2:20 (Video of Encounter). After Weaver explained to Perez that he was conducting an investigation, Perez again stated that he "did not need to answer [Weaver's] questions. DE 1 at 8 ¶¶ 9, 12; 93 at 2:29-2:34. Weaver further explained that because he was investigating the public service complaint, he had authority to temporarily detain Perez. *See* DE 1 at 8-9 ¶¶ 10, 17; 93 at 2:34-3:01.

When Weaver asked Perez to provide identification and identify his child in the passenger seat, Perez declined. *See* DE 93 at 3:22-3:26. Weaver explained that he did not think Perez committed a crime but found it suspicious that Perez declined to answer questions related to identification. *See id.* at 3:33-3:38, 5:07-5:45. Weaver explained that Perez's failure to answer these identifying questions hindered his investigation, and he ultimately decided to run Perez's license plate. *See id.* at 9 ¶ 21; DE 86-2 at 4 ¶¶ 21-22; *see also* DE 93 at 12:36-12:53, 15:40-15:56. Once Weaver "received the information from . . . Perez's plates, he informed Perez that he was free to go." DE 86-2 at 4 ¶ 22; *see also* DE 1 at 9 ¶¶ 21-22; DE 93 at 28:30-29:36 (explaining that, after speaking with another officer and "gaining some wisdom from him[,]" that he did not think,

---

[1] Perez concedes that there were two children in his vehicle, both minors. *See* DE 1 at 7 ¶ 5. Weaver was not aware of the second child until approximately eighteen minutes into the interaction. *See* DE 93 at 18:26-18:35.

2

based on the "sum of everything gathered" that he had probable cause to force Perez to identify himself). The detainment lasted roughly twenty-nine minutes.[2] *See id.* at 6.

In connection with these events, Perez sued Weaver and the City of McKee.[3] *See id*. As to Weaver, the Complaint alleges the following claims: (1) "Acts in Excess of Amendment IV; Unlawful Detention[;]" (2) Acts in Excess of Amendment IV; False Imprisonment[;]" (3) Acts in excess of amendment IV: Retaliation for assertion of Amendment IV protections[;]" (4) "Acts in excess of Amendment IV: Retaliation for assertion of Right to Remain Silent as per Amendment V[;]" (5) tortious breach of contract; and (6) intentional infliction of emotional distress. DE 1 at 11-16 ¶¶ 26-37.

Weaver, the sole remaining defendant, now seeks summary judgment on all claims. *See* DE 86. Perez responded in opposition, *see* DE 87, and Weaver replied, *see* DE 88. The matter is fully briefed and ripe for ruling.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether a genuine dispute exists, the Court considers all facts and draws all inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Further, the Court may not "weigh evidence [or] determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

---

[2] The interaction lasted a total of thirty-six minutes, but after twenty-nine minutes Weaver explained to Perez that he was free to go. *See* DE 93 at 29:26-29:35. In the remaining seven minutes, Weaver, at Perez's request, obtained the relevant CAD number. *See id.* at 30:12-35:26.

[3] The Court previously granted the City's motion for judgment on the pleadings, dismissing Perez's sole claim against the City. *See* DE 60 (Motion for Judgment on the Pleadings); 85 (Order Granting Motion for Judgment on the Pleadings). Weaver is the only remaining defendant.

3

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Id.* at 2552.

A fact is "material" if the underlying substantive law identifies the fact as critical. *See Anderson*, 106 S. Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* An issue is "genuine" is "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511 (citing *First Nat'l Bank of Az. v. Cities Servs. Co.*, 88 S. Ct. 1575, 1592 (1968)). Such evidence must be suitable for admission into evidence at trial. *See Salt Lick Bancorp v. FDIC*, 187 Fed. App'x 428, 444-45 (6th Cir. 2006).

**III. Analysis**

   **a. Section 1983 Claims**

Concerning Perez's § 1983 claims, Weaver asserts qualified immunity. *See* DE 86-1 at 9. Specifically, Weaver argues that his conduct during the May 25, 2022 encounter was objectively reasonable and did not violate a constitutional right. *See id.* Perez responded in opposition, arguing that "the continued detention of [Perez] was without probable cause because there was no indication of a naked child or any other wrongdoing whatsoever." DE 87 at 4.

Qualified immunity extends to government officials sued in their individual capacities. *See Harlow v. Fitzgerald*, 102 S. Ct. 2727, 2738 (1982). It shields government officials from "liability

4

for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Id.* To determine whether a defendant is entitled to qualified immunity, the Court must consider: "(1) whether the facts taken in the light most favorable to plaintiff could establish a constitutional violation; (2) whether the right was a 'clearly established' right of which any reasonable officer would have known; and (3) whether the official's actions were objectively unreasonable in light of that clearly established right." *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002) (citing *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)). The defendant bears the initial burden of raising qualified immunity. *See Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). "Thereafter, the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Id.* "Although the application of qualified immunity comprises a legal issue, summary judgment is inappropriate when conflicting evidence creates subordinate predicate factual questions which must be resolved by a fact finder at trial." *Hamilton v. Myers*, 281 F.3d 520, 531 (6th Cir. 2002) (citing *Anderson v. Creighton*, 483 107 S. Ct. 3034, 3040 (1987)).

Here Perez asserts three § 1983 claims: (1) "Acts in Excess of Amendment IV; Unlawful Detention[;]" (2) Acts in Excess of Amendment IV; False Imprisonment[;]" (3) Acts in excess of amendment IV: Retaliation for assertion of Amendment IV protections[.]" DE 1 at 11-13 ¶¶ 26-31. All three claims arise under one theory: that Weaver violated the Fourth Amendment when he detained Perez on May 25, 2022. *See id.* Insofar as qualified immunity is concerned, the Court performs a single analysis for all three claims, focusing on the constitutionality and reasonableness of Weaver's conduct.

5

Not every interaction between law enforcement and citizens is a Fourth Amendment violation or implicates its strictures. *See Terry v. Ohio*, 88 S. Ct. 1868, 1873 (1968) (explaining that the Fourth Amendment "forbids . . . not all searches and seizures, but unreasonable searches and seizures" (internal quotation marks omitted)). The Sixth Circuit has outlined three categories of "permissible encounters" between law enforcement and citizens: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause." *United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008).

The parties seem to agree that the May 25, 2022 encounter was initially consensual,[4] but evolved into an investigatory detention once Weaver approached Perez's vehicle and requested

---

[4] To the extent that Perez disputes this, there is no genuine dispute that the encounter began as a consensual one. In his deposition, Perez stated that Weaver's cruiser blocked his vehicle. *See* DE 86-3 at 32:6-8 (A. Perez Dep.) ("[Weaver] block[ed] the vehicle in the front, I lower my vehicle to see why he blocked the – why he blocked my freedom of movement there."). Weaver, however, submitted an affidavit stating that he parked his cruiser "slightly to the left of [Perez's] vehicle, roughly in an 11 o'clock position" and that "[t]here was enough room where Mr. Perez could have driven forward past my vehicle and existed the parking lot." DE 86-2 ¶ 9. Weaver's affidavit further stated that "there was nothing blocking Mr. Perez's vehicle from the rear, and he could have reserved his vehicle." *Id.* ¶ 10. In *United States v. Carr*, 674 F.3d 570, 573 (6th Cir. 2012), the Sixth Circuit found a consensual encounter where the officers stopped their vehicle at an angle in front of the defendant's vehicle, and defendant could have either driven forward or maneuvered around the unmarked police car or backed out of the carwash stall. Though Weaver and Perez dispute how much Weaver's cruiser obstructed Perez's vehicle, Perez offers no evidence to dispute Weaver's claim that Perez could have exited the lot by placing his vehicle in reverse. Where there is complete vehicle obstruction, the Sixth Circuit has found a seizure. *Cf. United States v. See*, 574 F.3d 309, 312 (6th Cir. 2009) (finding investigative detention where an officer "pulled his patrol car in front of [the defendant's] car and parked the patrol car in front of [the defendant's] car so that [the defendant] could not move his vehicle.").

In any event, vehicle orientation is only one factor in the overall analysis. "[P]hysical impossibility of egress is not the standard; the ultimate question remains whether the defendant believed he was . . . free to leave." *United States v. Mundy*, No. 5:13-CR-114-DCR-REW, 2013 WL 5652700, at *5 (E.D. Ky. Oct. 3, 2013) (footnote and internal quotation marks omitted) (second alteration in original) (quoting *United States v. Williams*, No. 12-5844, 2013 WL 18317773, at *3 (6th Cir. May 2, 2013)). "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 100 S. Ct. 1870, 1878 (1980) (citing cases). Here, Weaver was the only officer present (at least, until a second officer arrived at the very end of the encounter), and nothing in the record indicates that he displayed his weapon or made physical contact with Perez. While Perez alleges that Weaver "threatened to write a citation for hindering an investigation" and informed Perez

6

Perez's name. *See* DE 86-1 at 14 (arguing that the encounter was consensual but "began to transition into a brief investigatory detention"); 87 at 5 ("While Defendant's initial stop may have been justified, the continued detention of Plaintiff was without probable cause[.]"). Once a consensual encounter escalates to a point where a person, for investigation, is "seized," an officer must have reasonable suspicion of criminal activity to justify the stop. *See Reid v. Georgia*, 100 S. Ct. 2752, 2754 (1980). "Reasonable suspicion is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person of criminal activity." *United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008). For such a stop to be reasonable, there must be "a proper basis for the stop" and "the degree of intrusion into the suspect's personal security [must be] reasonably related in scope to the situation at hand." *United States v. Hardnett*, 804 F.2d 353, 356 (6th Cir. 1986). "[A] citizen's refusal to listen or answer does not, without more, provide reasonable, objective grounds to suspect criminal activity." *United States v. Chivers*, No. 1:19-CR-119, 2020 WL 5757135, at *11 (S.D. Ohio Sept. 28, 2020). "Only something more, added to the refusal . . . , can allow the refusal to help produce reasonable suspicion." *United States v. Lang*, 652 F. Supp. 3d 820, 833 (E.D. Ky. 2023) (citing *Chivers*, No. 1:19-CR-119, 2020 WL 5757135, at *11).

Weaver, under any version of events, had specific and articulable facts to support a reasonable suspicion of criminal activity, making the brief detainment of Perez objectively reasonable. *See Hardnett*, 804 F.2d at 356. First, if sufficiently reliable, "[a]n informant's tip is sufficient to establish reasonable suspicion; it need not be based exclusively on an officer's personal observations." *Hardnett*, 804 F.2d at 356 (citing *Adams v. Williams*, 92 S. Ct. 1921, 1923

---

that he was detained, *see* DE 1 ¶¶ 19-20, these events occurred after Weaver concedes that the interaction escalated into a seizure, *see* DE 86-1 at 14. In sum, a reasonable trier of fact could not conclude that the interaction began as an investigative detention.

7

(1972)). Here, it is undisputed by the parties that Weaver was responding to a complaint that an unattended naked child was near the Kentucky Farm Bureau and the Jackson County Extension Building. Weaver observed Perez's vehicle as the sole vehicle in the vicinity where the complaint placed the minor child, prompting him to investigate. Though Perez denied knowledge of the complaint, his refusal to identify himself or the minor(s) in the vehicle created reasonable suspicion that he may be involved in criminal activity. *See Hiibel v. Sixth Judicial Dist. Ct.*, 124 S. Ct. 2451, 2455 (2004) (stating that obtaining a suspect's name in the course of an investigative stop "serves important government interests" by (1) informing "an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder" or (2) helping "clear a suspect and allow the police to concentrate their efforts elsewhere"); *United States v. Motley*, No. 2:13-CR-20373-SHL, 2014 WL 2740377, at *12 (W.D. Tenn. June 17, 2014) (stating that, while the defendant had the right not to answer questions whether he had a license for a firearm and whether he was in possession of a firearm during a Terry stop, the refusal to respond did not help dispel the investigating officer's "reasonable fear for his own or others' safety"). Indeed, Weaver repeatedly expressed that Perez's refusal to identify himself or the children (in a matter concerning child welfare, no less), combined with the public service complaint and the location of his vehicle, caused him to be suspicious. *See* DE 93 at 17:45-8:22. Weaver explained that Perez could quell suspicion by identifying himself, and Perez unwaveringly refused to do so. *See id.*

The Court next considers the degree of intrusion into Perez's personal security. "This is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *Hardnett*, 804 F.2d at 356. To qualify as reasonable, the detainment must be "limited in scope and duration." *Florida v. Royer*, 103 S. Ct. 1319, 1326 (1983). "Typically, this means that the officer may ask the detainee a moderate number of questions to

8

determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond." *Berkemer v. McCarty*, 104 S. Ct. 3138, 3150 (1984).

Finally, even construing the facts in the light most favorable to Perez, the detainment was reasonable in scope and duration. Given the nature of the complaint and location of Perez's vehicle, Weaver reasonably asked Perez his name, his children's names, and whether he had any knowledge of the complaint. Perez denied knowledge of the complaint but refused to answer any identifying questions. Perez's refusal and the presence of two unidentified minor children, coupled with the vehicle's location and the public service complaint, provided Weaver with a reasonable basis to continue investigating. Asking for Perez's name and identification is "standard police practice and a request that raises no Fourth Amendment concern." *Baker v. Smiscik*, 49 F. Supp. 3d 489, 500 (E.D. Mich. 2014) (citing *Hiibel*, 124 S. Ct. at 2458 ("In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment . . . . Our decisions make clear that questions concerning a suspect's identity are a routine and accepted part of many Terry stops.")). Simply put, Perez's refusal to identify himself or his children prolonged the detainment. Weaver "temporarily detained . . . Perez for the purpose of running . . . Perez's plates to ascertain his identity[.]"[5] DE 86-2 at 4 ¶ 21. After running the plates and gaining additional, unspecified information from another officer, Weaver ceased his investigation and allowed Perez to go. *See id.* at 4 ¶ 22; DE 93 at 28:30-29:36.

---

[5] It is unclear whether Weaver discovered Perez's identity prior to him ending the detention. While Weaver's affidavit states that he ran Perez's "plates to ascertain his identity[,]" DE 86-2 at 4 ¶ 21, in the video, just prior to telling Perez that he was free to go, Weaver stated that he "did not know [Perez's] name[.]" DE 93 at 29:05. This variance is not of consequence.

Given the findings, that the seizure was supported by reasonable suspicion[6] and consistent with the Fourth Amendment, Perez faces a difficult qualified immunity burden. Perez must "establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Gardenhire*, 205 F.3d at 311. That showing plainly fails.

Perez contends that the seizure should have ended once "Weaver could clearly see that there was no naked child inside Plaintiff's vehicle, there was no naked child anywhere at the scene, and Plaintiff had already stated to Defendant that they had nothing to do with any naked child.". DE 87 at 5. In support, he cites *Sutton v. Metropolitan Government of Nashville and Davidson County*, 700 F.3d 865 (6th Cir. 2012). *Sutton*, which concerns an arrest without probable cause, is distinct from this case. *See Sutton*, 700 F.3d at 876. There, the officer responded to a reported shoplifting and found a cell phone belonging to the alleged perpetrator. *Id.* at 869. The officer called a number in the cell phone's contact list, and the person who answered connected the phone to the defendant. *See id.* The officer, *aware of the defendant's identity*, visited the defendant at his workplace. *See id.* at 869. The defendant spoke with the officer, denied stealing or owning the at-issue cell phone, and showed the officer "a different cell phone taken from [the defendant's] own pocket." *Id.* Nonetheless, the officer arrested the defendant, handcuffed him, placed him in the back seat of a police cruiser, and drove to the scene of the theft. *See id.* at 870. The defendant sat in the vehicle for forty-five minutes while the officer went inside the store to watch a security tape. *See id.* The Sixth Circuit found a Fourth Amendment violation because the officer's "sole

---

[6] Though he describes the interaction as a detention, Perez briefly references the probable cause standard, which applies once a detention escalates to an arrest. *See* DE 87 at 4-5; *see also Houston v. Clark Cnty. Sheriff Deputy John Does* 1–5, 174 F.3d 809, 814 (6th Cir.1999) (explaining that the when "the length and manner" of the stop, including any force used, are not "reasonably related to the basis for the initial intrusion," then the stop ripens into an arrest, for which the officers must show probable cause.). To the extent that Perez intends to argue that he was arrested, he advances no evidence or argument that the purpose, scope, or circumstances of the stop went beyond its initial purpose and became an arrest.

10

basis for suspecting that Sutton was the shoplifting perpetrator . . . was neutralized when Sutton produced a cell phone from his own pocket." *Id.* Unlike in *Sutton*, Weaver had no knowledge of Perez's identity and did not uncover any facts during the interaction to dispel suspicions surrounding Perez. While Perez denied any knowledge of the unattended naked child, that denial alone was insufficient to dispel Weaver's reasonable suspicion. Indeed, the presence of a minor child in Perez's vehicle, the fact that Perez's car was the only source of persons on site, combined with Perez's refusal to identify himself or the children, only increased Weaver's suspicions. The parking lot was after hours and empty except for the Perez car. Further, Weaver ended the seizure once he ran Perez's license plate and ascertained his identity. *Cf. Sutton*, 700 F.3d at 874 ("The permissible scope of Officer Martin's initial detention of Sutton was to ascertain his identity and to ask limited questions regarding the cell phone found at the Kroger store. These are 'the circumstances that initially justified the stop.' . . . . Had Sutton's detention ended here, his Fourth Amendment rights would not have been violated. But it did not so end." (internal citations omitted)).

Outside of reliance on *Sutton*, Perez merely states that the jury must decide whether the amount of time Perez was detained was reasonable under the Fourth Amendment. *See* DE 87 at 5. But Perez offers no evidence that Weaver unreasonably prolonged the stop once he ascertained Perez's identity. *See United States v. Sharpe*, 105 S. Ct. 1568, 1575 (1985) ("In assessing whether a detention is too long in duration to be justified as an investigative stop, [the Court] . . . examine[s] whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."). Indeed, Perez concedes that the seizure concluded once Weaver ran his license plate. DE 1 at 9 ¶¶ 21-22. Weaver ran the plate because Perez refused to provide his and the minors' identities. In short,

Perez fails to meet his burden that Weaver's "conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." On this record, there is no genuine issue, and summary judgment is warranted.

Once a defendant raises a qualified immunity argument, the plaintiff must define the clearly established law with "a 'high degree of specificity.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015)); *see also White v. Pauly*, 137 S. Ct. 548, 552 (2017) ("The panel majority misunderstood the 'clearly established' analysis: It failed to identify a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment."). Here, Perez fails to identify a case clearly marking the boundary and proscribing Weaver's management.

### b. Fifth Amendment Claim

Next, Weaver seeks summary judgment on Perez's "Acts in excess of Amendment IV: Retaliation for assertion of Right to Remain Silent as per Amendment V" claim. *See* DE 86-1 at 17. Perez's response, with respect to defense against summary judgment, is silent on this claim, constituting a waiver. *See Alexander v. Carter for Byrd*, 733 F. App'x 256, 261 (6th Cir. 2018) ("When a plaintiff 'fails to address [a claim] in response to a motion for summary judgment,' the claim is deemed waived." (alteration in original) (quoting *Haddad v. Sec'y, U.S. Dept. of Homeland Sec.*, 610 F. App'x 567, 568-69 (6th Cir. 2015)). In any event, to assert a Fifth Amendment claim, "there must be a criminal case or at least the initiation of legal proceedings in order for that privilege to be asserted." *Wright v. Genesee Cnty. Corp.*, 659 F. Supp. 2d 842, 850 (E.D. Mich. 2009) (citing *Chavez v. Martinez*, 123 S. Ct. 1994, 2001-02 (2003)). Simply put, "police questioning does not constitute a 'case'" that would invoke Perez's Fifth Amendment right.

*Chavez*, 123 S. Ct. at 2001. Further, again, Plaintiff identifies no case standing for the proposition that an officer proceeding to investigate in the face of refused identification somehow violates the constitution. Summary judgment is appropriate.

### c. Tortious Breach of Contract

Next, Weaver seeks summary judgment on Perez's "tortuous [sic] breach of contract" claim. *See* DE 86-1 at 18 (quoting DE 1 at 15). Perez fails to respond to this argument, again, abandoning the claim. *See Alexander*, 733 F. App'x at 261. Even if the Court were to consider the claim's merits, outside perhaps of insurance law, Kentucky law does not provide for such a claim, so it fails. Even construing the claim as a breach of contract claim, Perez identifies no contract between him and Weaver or him and anyone else. At most, and charitably read, the Complaint vaguely references an "oath," but Perez places no evidence in the record and the Court is unaware of any law recognizing an individual citizen's right to prosecute such a theory.[7] Accordingly, summary judgment is proper.

---

[7] At a minimum, there would be a significant question of lack of standing. To establish Article III standing, a plaintiff must plausibly allege that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (citing *Lujan v. Defenders of Wildlife*, 112 S. Ct. 2130, 1236 (1992)). Perez, as the plaintiff, bears the burden of demonstrating all three elements. *See Lujan*, 112 S. Ct. at 1236. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 112 S. Ct. at 1236). A particularized injury "must affect the plaintiff in a personal and individual way." *Id*. Here, Perez fails to articulate a concrete and particularized injury. The Complaint—the only document in the record referencing this claim—states that "Plaintiff, as one of the People, was harmed by the breach of the agreement and trust." DE 1 at 15 ¶ 35. It does not indicate or specify, however, what injury Perez allegedly suffered. The allegation of harm is too abstract to constitute a concrete injury. Moreover, the only interest that Perez claims is that he is "one of the People[.]" *Id.* The Supreme Court has repeatedly held that to state a particularized injury, "a plaintiff must have more than 'a general interest common to all members of the public.'" *Lance v. Coffman*, 127 S. Ct. 1194, 1197 (2007); *see also Ex parte Levitt*, 58 S. Ct. 1, 1 (1974) ("It is an established principle that to entitle a private individual to invoke the judicial power . . . it is not sufficient that he has merely a general interest common to all members of the public.").

### d. False Imprisonment

Concerning Perez's false imprisonment claim, Weaver argues that he is entitled to qualified immunity. *See* DE 86-1 at 19-20. Though Perez addresses qualified immunity in the context of the § 1983 claims, he advances no argument concerning the state false imprisonment claim. Though this also constitutes a waiver, *see Alexander*, 733 F. App'x at 261, even considering the claim in the light most favorable to Perez, summary judgment is proper.

False imprisonment is "any deprivation of the liberty of one person by another or detention for however short a time without such person's consent and against his will, whether done by actual violence, threat, or otherwise." *Ford Motor Credit v. Gibson*, 566 S.W.2d 154, 155 (Ky. Ct. App. 1977) (citing cases). In Kentucky, "when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Qualified immunity protects officers from liability for discretionary acts, taken in good faith, within the scope of their authority. *See id.* An act is discretionary if it requires the exercise of judgment or personal deliberation. *See id.* In contrast, qualified official immunity is not available "for the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* "Bad faith can be demonstrated by objective unreasonableness or by a subjective intention to harm (i.e., a 'corrupt motive')." *Williams v. Sandel*, 433 F. App'x 353, 363 (6th Cir. 2011). The plaintiff bears the burden of proving that the act was not performed in good faith. *Id.* Simply put, this claim fails because Perez fails to offer any evidence of bad faith.

14

Indeed, a bad faith avenue is proof that an action violated a clear constitutional or statutory standard. *See Yanero*, 65 S.W.3d at 524 ("[I]n the context of qualified official immunity, 'bad faith' can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position[.]"). As with the federal analysis, Perez fails to show how Weaver, confronting a public safety complaint involving a naked child, violated any clear standard in approaching and clearing the only adult and minors he encountered at the scene. There is no jury question that would displace *Yanero* immunity in this discretionary context.

### e. Intentional Infliction of Emotional Distress

Finally, Weaver seeks summary judgment on Perez's intentional infliction of emotional distress claim. *See* DE 86-1 at 20. Perez's failure to respond, again, signals abandonment of the claim. *See Alexander*, 733 F. App'x at 261. The record, again, indicates that summary judgment is appropriate.

An IIED claim requires that (1) "[t]he wrongdoer's conduct [was] intentional or reckless;" (2) the conduct was "outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;" (3) there was "a causal connection between the wrongdoer's conduct and the emotional distress[;]" and (4) the claimant suffered severe distress. *Osborne v. Payne*, 31 S.W.3d 911, 913-14 (Ky. 2000). While the Court construes the facts in the light most favorable to Perez, he must advance more than a scintilla of evidence to defeat summary judgment. *See Anderson*, 106 S. Ct. at 2512. Here, Perez advances no such evidence beyond conclusory allegations that Weaver caused emotional distress. The record contains no evidence of intentional or reckless outrageous conduct. When asked in a deposition if he believed that Weaver intended to cause emotional distress, Perez replied "I don't know." DE 87-1 at 47:1-2. And Perez never

15

claims—even in the Complaint—that Weaver's conduct was reckless. Further, though Perez states that he experienced emotional distress as a result of the May 25th incident, *see id.* at 46:19-23, 47:11-13, he offers no proof. Perez concedes that he never sought counseling or therapy from a medical provider, and never missed work because of the encounter. *See id.* at 47:14-24. The only "evidence" offered—Perez's video of the encounter along with his statement that he pursued therapy "[p]rivately . . . within . . . family"—is plainly insufficient to create a genuine issue as to the injury element. *See Osborne v. Keeney*, 399 S.W.3d 1, 17-18 (Ky. 2012) ("[A] plaintiff claiming emotional distress damages must present expert medical or scientific proof to support the claimed injury or impairment."). In sum, Perez's conclusory allegations, all absent cognizable support, fail to support an IIED claim. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) ("Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted."). The Court will thus grant summary judgment on the IIED claim.

### IV.  Conclusion

For the above reasons, the Court **GRANTS** DE 86, Weaver's motion for summary judgment. The Court will enter a corresponding judgment.

This the 29th day of July, 2024.

Signed By:
*Robert E. Wier*  /s/ REW
United States District Judge